UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EARNEST WILLIAMS,** **INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED** | **CIVIL ACTION** |
| **VERSUS** | **NO: 15-2268** |
| **HOSPITAL SERVICE DISTRICT NO. 1 OF TANGIPAHOA PARISH D/B/A NORTH OAKS HEALTH SYSTEM AND NORTH OAKS MEDICAL CENTER, AND LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY D/B/A BLUE CROSS BLUE SHIELD OF LOUISIANA** | **SECTION: "S" (3)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (Doc. #10) is **GRANTED**, and this matter is **REMANDED** to the Twenty-First Judicial District Court, Parish of Tangipahoa, State of Louisiana. The motion is **DENIED** as to an award of attorneys' fees and costs.[1]

## BACKGROUND

This matter is before the court on a motion to remand filed by plaintiff, Earnest Williams, individually and on behalf of all others similarly situated. Williams argues that remanding this matter to the Twenty-First Judicial District Court, Parish of Tangipahoa, State of Louisiana is appropriate because his claims against defendant, Louisiana Health Service & Indemnity Company

---

[1] Under 28 U.S.C. § 1447(c), the court may award the plaintiff "payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." The Supreme Court of the United States has held that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." Martin v. Franklin Capital Corp., 126 S.Ct. 704, 708 (2005). BCBSLA's removal was objectively reasonable. Therefore, the motion for attorneys' fees and costs is DENIED.

d/b/a Blue Cross Blue Shield of Louisiana ("BCBSLA"), are not completely pre-empted under § 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a).

On February 26, 2011, Williams was involved in a motor vehicle accident in Tangipahoa Parish, Louisiana and sought emergency medical treatment at a facility owned by defendant, Hospital Service District No. 1 of Tangipahoa Parish d/b/a North Oaks Health System and North Oaks Medical Center ("North Oaks"). At the time of the accident, Williams had a health insurance policy under which claims were made through and administered by BCBSLA. North Oaks had a contract with BCBSLA under which North Oaks was a participating provider for Williams' health insurance policy. Pursuant to the contract, North Oaks was required to submit Williams' claim to BCBSLA and accept a discounted payment from BCBSLA. North Oaks filed a claim with BCBSLA and was paid for Williams' charges. Williams alleges that North Oaks then attempted to collect amounts from him in violation of its agreement with BCBSLA and Louisiana law "by asserting a lien/privilege against [Williams'] liability insurance claim against State Farm Insurance Company for the full and undiscounted charges."

On May 8, 2015, Williams filed this action in the Twenty-First Judicial District Court, Parish of Tangipahoa, State of Louisiana on his own behalf and seeking to represent a class consisting of:

> All individuals currently or formerly residing in the State of Louisiana during the relevant time period [January 1, 2004, to the present date and continuing through the date of judgment]:

(1) Having "Heath Insurance Coverage" [as defined by La. R.S. 22:1872(18)[2]] providing coverage for themselves or for others for whom they are legally responsible, with any "Health Insurance Issuer" [as defined by La. R.S. 22:1872(19)[3]] at the time "covered health care services" [as defined by La. R.S. 22:1872(8)[4]] were provided at NORTH OAKS; and

(2) With which "Health Insurance Issuer" NORTH OAKS was a "contracted health care provider" at the time of service [as defined by La. R.S. 22:1872(6)[5]]; and,

(3) From whom NORTH OAKS collected, and/or attempted to collect, the "Health Insurance Issuer's Liability" [as defined by La. R.S. 22:1872(20)[6]], including, but not limited to, any collection

---

[2] La. Rev. Stat. § 22:1872(18) defines "health insurance coverage" as "benefits consisting of medical care provided or arranged for directly, through insurance or reimbursement, or otherwise, and includes health care services paid for under any plan, policy, or certificate of insurance."

[3] La. Rev. Stat. § 22:1872(19) defines "health insurance issuer" as:

> any entity that offers health insurance coverage through a policy or certificate of insurance subject to state law that regulates the business of insurance. For purposes of this Subpart, a "health insurance issuer" shall include a health maintenance organization, as defined and licensed pursuant to Subpart I of Part I of Chapter 2 of this Title, nonfederal government plans subject to the provisions of Subpart B of this Part, and the Office of Group Benefits.

[4] La. Rev. Stat. § 22:1872(8) defines "covered health care services" as "services, items, supplies, or drugs for the diagnosis, prevention, treatment, cure, or relief of a health condition, illness, injury, or disease that are either covered and payable under the terms of health insurance coverage or required by law to be covered."

[5] La. Rev. Stat. § 22:1872(6) defines "contracted health care provider" as "a health care provider that has entered into a contract or agreement directly with a health insurance issuer or with a health insurance issuer through a network of providers for the provision of covered health care services."

[6] La. Rev. Stat. § 22:1872(20) provides:

> (a) "Health insurance issuer liability" means the contractual liability of a health insurance issuer for covered health care services pursuant to the plan or policy provisions between the enrollee or insured and the health insurance issuer.
>
> (b) In the case of a contracted health care provider, "health insurance issuer liability" is the contracted reimbursement rate reduced by the patient responsibility, which includes coinsurance, copayments, deductibles, or any

3

>or attempt to collect from any settlement, judgment or claim made against any third person or insurer who may have been liable for any injuries sustained by the patient (which insurers include those providing liability coverage to third persons, uninsured/ underinsured coverage, and/or medical payments coverage); and/or
>
>(4) From whom NORTH OAKS collected, and/or attempted to collect, any amount in excess of the "Contracted Reimbursement Rate" [as defined by La. R.S. 22:1872(7)[7]], including but not limited to, any collection or attempt to collect from any settlement, judgment, or claim made against any third person or any insurer which may have been liable for any injuries sustained by the patient (which insurers include those providing liability coverage to third persons, uninsured/underinsured coverage, and/or medical payments coverage).

Williams alleges that North Oaks' actions violated the Balance Billing Act, Louisiana Revised Statutes § 22:1874,[8] which provides, in pertinent part:

>A. (1) A contracted health care provider shall be prohibited from discount billing, dual billing, attempting to collect from, or collecting from an enrollee or insured a health insurance issuer liability or any other amounts identified by the health insurance issuer on an explanation of benefits as an amount for which the enrollee or insured is liable for the covered service.
>
>(c) In the case in which a contracted reimbursement rate has not been established, "health insurance issuer liability" is the liability pursuant to the plan or policy provisions between a health insurance issuer and their enrollee or insured for the covered service.
>
>(d) In the case of noncontracted facility-based physicians providing covered health care services at a base health care facility, "health insurance insurer liability" is the amount as determined pursuant to the plan or policy provisions between the enrollee or insured and the health insurance issuer.

---

[7] La. Rev. Stat. § 22:1872(7) defines "contracted reimbursement rate" as "the aggregate maximum amount that a contracted health care provider has agreed to accept from all sources for provision of covered health care services under the health insurance coverage applicable to the enrollee or insured."

[8] In Anderson v. Ochsner Health Sys., - - - So.3d - - -, 2014 WL 2937101 (La. 2014), the Supreme Court of Louisiana held that a patient has a private right of action under La. Rev. Stat. § 22:1874.

amount in excess of the contracted reimbursement rate for covered health care services.

(2) No contracted health care provider shall bill, attempt to collect from, or collect from an enrollee or insured any amounts other than those representing coinsurance, copayments, deductibles, noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer on an explanation of benefits as an amount for which the enrollee or insured is liable.

(3) However, in the event that any billing, attempt to collect from, or the collection from an enrollee or insured of any amount other than those representing copayment, deductible, coinsurance, payment for noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer as the liability of the enrollee or insured is based on information received from a health insurance issuer, the contracted health care provider shall not be in violation of this Subsection.

(4) A health insurance issuer contracting with a network of providers is obligated to pay to a contracted health care provider the contracted reimbursement rate of the network identified on the member identification card of the enrollee or insured, pursuant to R.S. 40:2203.1, and established by the contract between the network of providers and the contracted health care provider. The payor must comply with all provisions of the specific network contract. To the extent that a health insurance issuer does not pay to the health care provider an amount equal to the health insurance issuer liability, the contracted health care provider may collect the difference between the amount paid by the health insurance issuer and the health insurance issuer liability from the enrollee or insured. Any such collection efforts shall not constitute a violation of this Subpart.

*     *     *

B. No contracted health care provider may maintain any action at law against an enrollee or insured for a health insurance issuer liability or for payment of any amount in excess of the contracted reimbursement rate for such services. In the event of such an action, the prevailing party shall be entitled to recover all costs incurred, including reasonable attorney fees and court costs. However, nothing in this Subsection shall be construed to prohibit a contracted health care provider from maintaining any action at law against an enrollee or

> insured after a health insurance issuer determines that the health
> insurance issuer is not liable for the health care services rendered.

Williams alleges that North Oaks violated this statute "by failing to file claims with health insurers, by failing to accept payments from health insurers, by attempting to collect and collecting from insureds or enrollees amounts in excess of those legally owed by those insured or enrollees." Further, Williams alleges that North Oaks hired third-party "collection agencies to refuse acceptance of the patients' health insurance and/or payment by Plaintiffs' health insurer as full payment, and to collect directly or indirectly from the enrollees or insureds, by filing liens/privileges, which constitute actions at law, against Plaintiffs and members of the Class."

Williams also alleges that BCBSLA is solidarily liable with North Oaks for North Oaks' violation of La. Rev. Stat. § 22:1874, because an object of the health insurance contract was BCBSLA's promise to its insured that contracted health care providers, such as North Oaks "would file claims with [BCBSLA] and/or would accept the contracted reimbursement rate from [BCBSLA], and/or would collect from the enrollee or insured only any deductible, co-payment, co-insurance or other amounts as set forth in the policy of insurance as the insured's liability." Williams alleges that North Oaks failed to perform as promised by BCBSLA rendering BCBSLA liable for North Oaks' actions. Moreover, Williams alleges that he detrimentally relied on BCBSLA's promise that North Oaks would perform in accordance with the insurance contract.

On June 22, 2015, BCBSLA removed this action to the United States District Court for the Eastern District of Louisiana alleging federal question subject-matter jurisdiction under 28 U.S.C. § 1331 because the state-law claims against it are pre-empted by ERISA. BCBSLA claims that, although Williams' insurance policy is not governed by ERISA, the policies of other class members

will be, and the class members will make claims for benefits under the policies, which are pre-empted by ERISA. Williams filed a motion to remand, arguing that complete pre-emption under ERISA does not apply.

## ANALYSIS

### I. Remand Standard

Motions to remand to state court are governed by 28 U.S.C. 1447(c), which provides that "[i]f at any time before the final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." The removing defendant bears the burden of demonstrating that federal jurisdiction exists and therefore that removal was proper. Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir.). In assessing whether removal is appropriate, the court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir.2002). Doubts regarding whether federal jurisdiction is proper should be resolved against federal jurisdiction. Acuna v. Brown & Root, 200 F.3d 335, 339 (5th Cir. 2000).

### II. ERISA Pre-emption

BCBSLA alleges that this court has subject-matter jurisdiction under 28 U.S.C. § 1331, which provides that the federal district court "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Pursuant to the well-pleaded complaint rule, an action "'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'" Vanden v. Discover Bank, 129 S.Ct. 1262, 1272 (2009) (quoting Louisville & Nashville R. Co. v. Mottley, 29 S.Ct. 42 (1908)). The well-

pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar Inc. v. Williams, 107 S.Ct. 2425, 2429 (1987). "[A]" case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Id. at 2430.

However, the "complete pre-emption" doctrine, provides an "independent corollary" to the well-pleaded complaint rule. Id. Under the complete pre-emption doctrine, "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Id. (quoting Metro. Live Ins. Co. v. Taylor, 107 S.Ct. 1542, 1547 (1987)). Thus, if "'a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed." Aetna Health Inc. v. Davila, 124 S.Ct. 2488, 2495 (2004) (quoting Beneficial Nat'l Bank v. Anderson, 123 S.Ct. 2058, 2063 (2003)). ERISA is a federal statute capable of completely pre-empting state law. Id.

Congress enacted ERISA "to provide a uniform regulatory regime over employee benefit plans[,]" and to protect the participants' interests "by setting out substantive regulatory requirements for employee benefit plans and [by providing] 'for appropriate remedies, sanctions, and ready access to the Federal courts.'" Id. (quoting 29 U.S.C. § 1001(b)). ERISA "includes an integrated system of procedures for enforcement" in § 502(a), which is "essential to accomplish Congress' purpose of creating a comprehensive statute for regulation of employee benefit plans." Id. "Therefore, any state-law clause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy

conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Id.

Section 502(a)(1)(B) of ERISA provides that a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1131(a)(1)(B). In Davila, the Supreme Court of the United States explained:

> This provision is relatively straightforward. If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits. A participant or beneficiary can also bring suit generically to "enforce his rights" under the plan, or to clarify any of his rights to future benefits . . .
>
> It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls within the scope of ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

Id. at 2496 (internal quotations and citations omitted).

However, not all state-law causes of action that relate to employee benefit plans are completely pre-empted by ERISA. "ERISA might preempt a state law cause of action by way of conflict-preemption (also known as ordinary preemption) under § 514." Giles v. NYLCare Health Plans, Inc., 172 F.3d 332, 337 (5th Cir. 1999). Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). State-law claims "relate to" an ERISA plan if "the state law claims address

9

areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan" and "the claims directly affect the relationship among the traditional ERISA entities – the employer, the plan and its fiduciaries, and the participants and beneficiaries." Woods v. Tex. Aggregates, L.L.C., 459 F.3d 600, 602 (5th Cir. 2006) (citation and quotation omitted). Further, § 514(b)(2)(A) provides that ERISA "shall not be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). A state law "regulates insurance" if it is specifically directed toward entities engaged in insurance and substantially affects the risk pooling arrangement between the insurer and the insured. Ky. Ass'n of Health Plans, Inc. v. Miller, 123 S.Ct. 1471, 1479 (2003).

The United States Court of Appeals for the Fifth Circuit has explained that state-law claims that are not encompassed by § 502 of ERISA, may be subject to conflict pre-emption under § 514(a), but the well-pleaded complaint rule applies, and those claims are not removable. Giles, 172 F.3d at 337 (citing Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 355 (3d Cir.1995)). "The presence of conflict-preemption does not establish federal question jurisdiction. Rather than transmogrifying a state cause of action into a federal one — as occurs with complete preemption — conflict preemption serves as a *defense* to a state action." Id. Because the court "lacks removal jurisdiction, [it] cannot resolve the dispute regarding preemption" and must "remand the matter to state court where the preemption issue can be addressed and resolved." Id. (citing Dukes, 57 F.3d at 355).

Emigh v. W. Calcasieu Cameron Hosp., 2015 WL 4209230 (W.D. La. 7/9/2010), is substantially similar to the case at bar. In Emigh, the plaintiffs filed a putative class action bringing claims against West Calcasieu Cameron Hospital ("WCCH") and their respective health insurance providers alleging that WCCH violated La. Rev. Stat. § 22:1874 in the same manner that Williams

10

alleges North Oaks violated that statute. Specifically, the <u>Emigh</u> plaintiffs allege that they were involved in motor vehicle accidents, received treatment at WCCH and WCCH failed to submit claims to their health insurance companies, and instead sought to collect full, undiscounted medical charges directly from the plaintiffs. <u>Emigh</u>, 2015 WL 4209230, at *1. Plaintiffs alleged that their

> insurers contractually promised them that network providers, such as WCCH, would: (A) file medical claims with the insurer; (B) accept a reduced network reimbursement rate from the insurer; and (C) limit the insured's liability to any deductible, co-payments, co-insurance, or other amounts as set forth in the policy of insurance as the insured's responsibility. [Plaintiffs also alleged] that their insurers were liable because WCCH failed to perform as promised.

<u>Id.</u> at *2.

BCBSLA filed an exception of no cause of action, which was overruled by the district court. The Louisiana Court of Appeal, Third Circuit, affirmed the district court's ruling, and BCBSLA filed an interlocutory appeal to the Supreme Court of Louisiana. <u>Id.</u> The Supreme Court of Louisiana upheld the court of appeal's ruling, finding that plaintiffs stated a cause of action against BCBSLA under Louisiana Civil Code article 1977, which provides:

> The object of a contract may be that a third person will incur an obligation or render a performance.
>
> The party who promised that obligation or performance is liable for damages if the third person does not bind himself or does not perform.

<u>Emigh v. W. Calcasieu Cameron Hosp.</u>, 145 So.3d 369, 374 (La. 2014). The Court explained that "[t]his civilian concept known as *promesse de porte-fort* contemplates a contract in which the object is that a third party will undertake a certain obligation; in the event of non-performance of that obligation by the third party, the promisor becomes liable to the promisee." <u>Id.</u> The Court found that

11

"the object of the contract is the entitlement to discounted health care costs. The actual billing of this promised, discounted charge is performed by a third party. Thus, [BCBSLA] is promising that a third party will render a performance, which fits squarely within the context of La. Civ. Code art. 1977." Id. at 375.

After the Supreme Court of Louisiana remanded the matter, the district court granted BCBSLA's exception of non-joinder of indispensable party, finding that the class necessarily included patients who were covered under self-funded, employer-sponsored health plans. Plaintiffs filed an amended petition alleging that the employers were solidariy liable for WCCH's improper billing practices under La. Civ. Code art. 1977. Emigh, 2015 WL 4209230, at *2-3. Thereafter, one of the insurer defendants removed the matter to the United States District Court for the Western District of Louisiana arguing that the claims against the employers were pre-empted by ERISA. Id. at *3. Plaintiffs filed a motion to remand. Id.

After analyzing complete and conflict pre-emption under ERISA, the court granted plaintiffs' motion to remand finding that complete pre-emption did not apply because plaintiffs could not have brought their claims against the employers under § 502(a)(1)(B) of ERISA. The court stated that plaintiffs are

> not claiming that [they] were wrongfully denied coverage that was due under the terms of the [employer's] plan. Rather, in naming [the employer as] a defendant, [plaintiffs are] attempting to hold the sponsor of [the] plan liable for the improper billing practice of WCCH under Louisiana theories of solidary liability. The legal arguments in favor of solidary liability, *i.e.* breach of a *promesse de prote-fort* and detrimental reliance, are based on Louisiana law, rather than ERISA or an ERISA plan.

\*       \*       \*

> Plaintiffs claims will not require the court to interpret and ERISA plan to determine whether plaintiff's were wrongfully denied coverage or whether the administration of a claim was improper. Plaintiffs' primary complaint involves WCCH's violations of the Balance-Billing Act. The secondary argument that the employer-sponsors and third-party administrators are solidarily liable for WCCH's actions does not convert this suit into an ERISA case. In seeking to impose solidary liability, plaintiffs are not relying on ERISA or the particular terms of an ERISA plan. Rather, plaintiffs are relying on independent state-law duties, *i.e.* breach of a *promesse de porte-forte* and detrimental reliance. Under the *Davila* standard, such arguments do not fall within the scope of ERISA § 502(a)(1)(B).

Id. at *6-7. Thus, the court found that it did not have subject matter jurisdiction because complete pre-emption did not apply. Id. at *7. The court remanded the case to the state court where issues concerning conflict pre-emption could be determined. Id.

In this case, BCBSLA argues that Emigh "is just wrong." BCBSLA contends that complete pre-emption under § 502(a)(1)(B) should apply because the "[p]lan is the only connection" between it and the plaintiffs, and plaintiffs "rely solely on the provisions and benefits of the health plan to impose liability on BCBSLA." BCBSLA argues that plaintiffs are claiming that the value of their benefits were decreased by North Oaks' imposing payments of claims outside of the benefit plans and this reduction in value is actually a claim for benefits under the plan that is properly brought under § 502(a)(1)(B).

After reviewing the complaint and applicable law regarding ERISA pre-emption, this court finds that the reasoning of Emigh, 2015 WL 4209230, is correct and remand is appropriate. As in Emigh, plaintiffs in the case at bar have stated Louisiana state-law claims against BCBSLA under La. Civ. Code art. 1977 for a breach of a *promesse de porte-forte* and a claim for detrimental reliance. These claims rely solely on Louisiana law, not ERISA, and will not require an

13

interpretation of the plan. Rather, North Oaks' billing practices are the relevant facts, and the insurers' liability is alleged to arise by operation of Louisiana law, not the ERISA plan. Thus, plaintiffs' motion to remand is GRANTED, and this matter is REMANDED to the Twenty-First Judicial District Court, Parish of Tangipahoa, State of Louisiana.

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (Doc. #10) is **GRANTED**, and this matter is **REMANDED** to the Twenty-First Judicial District Court, Parish of Tangipahoa, State of Louisiana. The motion is **DENIED** as to an award of attorneys' fees and costs.

New Orleans, Louisiana, this __29th__ day of September, 2015.

                                      **MARY ANN VIAL LEMMON**
                                      **UNITED STATES DISTRICT JUDGE**